THE STATE OF OHIO, APPELLEE, *v.* SWITZER, APPELLANT.

[Cite as State v. Switzer (1970), 22 Ohio St. 2d 47.]

(No. 69-273—Decided April 15, 1970.)

48

*Mr. Paul W. Brown,* attorney general, *Mr. John T. Davidson* and *Mr. Daniel Fedders,* for appellee.

*Messrs. Santen, Santen & Hughes* and *Mr. Franklin A. Klaine, Jr.,* for appellant.

CORRIGAN, J. The cardinal question presented for determination in this appeal is whether R. C. 1533.63 and

1533.301 apply to the acts of appellant in transporting the fish within this state.

A subsidiary question, which could be dispositive of the appeal, is appellant's contention that R. C. 1533.63, which allows the Chief of the Division of Wildlife by administrative order to change the limits as to the length of fish and specify a length different from that established by the statute is an unlawful delegation of legislative power.

R. C. 1533.63 provides, in part:

*"Except as otherwise provided by the Chief of the Division of Wildlife,* no person shall * * * possess * * * a walleye less than thirteen inches in length * * *."* (Emphasis added.)

R. C. 1531.08 permits the Chief of the Division of Wildlife to regulate:

"(D) Taking, possession, transportation, buying, selling, offering for sale, and exposing for sale commercial fish or any part thereof, including species taken, length, weight, method of taking, mesh sizes, specifications of nets and other fishing devices, seasons, and time and place of taking."

Pursuant to the above-stated statutory authority, the Chief of the Division of Wildlife promulgated Division of Wildlife Order-Chapter NRW-3, Rule 02, which set the legal limit on length of walleyed pike at 15½ inches.

R C. 1533.63 also provides:

"Violation of an order of the Chief of the Division of Wildlife varying the length or weight of fish which can be taken, caught, or possessed under provisions of this section is a violation of this section and a fish which is undersized under such order is undersized under the provisions of this section."

Appellant's position is that the authority given to the Chief of the Division of Wildlife to change the legal limits of length of fish is an unlawful delegation of legislative power.

It is fundamental that a legislative body may dele-

gate authority to an administrative agency to promulgate rules and regulations and to ascertain facts upon which provisions of the law may operate so long as sufficient standards are set up in the statute authorizing the delegation.

Whether a grant of authority by a legislative body to an administrative agency constitutes an unlawful delegation depends in large part upon the adequacy of standards outlined by the legislative body in its grant of authority.

As stated in *Matz* v. *J. L. Curtis Cartage Co.*, 132 Ohio St. 271, 280:

"It is the general rule that in order to confer the power to make rules and regulations upon a commission, the Legislature must establish the policy of the law by adopting standards * * * with reference to conferring official discretion. The discretion conferred must not be 'unconfined and vagrant' and must be 'canalized within banks that keep it from overflowing.' (Mr. Justice Cardozo in *Panama Refining Co.* v. *Ryan, supra.*)"

Another factor which must be considered in determining whether there is an unlawful delegation is the practicability of laying down definite standards. This was noted in paragraph seven of the syllabus in *Matz*, which reads:

"As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations."

The administrative order here in question was adopted by the Chief of the Division of Wildlife who has been granted by R. C. 1531.08 "authority and control in all mat-

ters pertaining to the protection, preservation, propagation, possession, and management of * * * wild animals
* * * ."

The General Assembly having expressed a legislative purpose that wild animals are worthy of state regulation, it follows that the protection and preservation of our wild game merits and requires constant supervision by persons qualified to implement that purpose. Generally, courts have given liberal construction to such statutes to the end that the public welfare should be subserved. The General Assembly, which is not in constant session, is not equipped to afford that protection. As the Supreme Court of New Mexico said in *State, ex rel. Sofeico, v. Heffernan,* 41 N. M. 219, 229, 67 P. 2d 240:

"* * * It [the Legislature] is concerned with many affairs of state other than the protection of our wild life. The knowledge and ability required of providing means to preserve, propagate, and protect the birds in the air, the beasts in our forests, and the fish in our streams and lakes, requires years of study and knowledge beyond that of the average man. Considering all the elements involved, it would be unreasonable and unscientific to expect the Legislature to determine in advance when a game or fish season should be open or closed, when and where game and bird preserves should or should not be established. If a drouth or flood should occur, which, coupled with an open season, might exterminate any of the game, fish or bird species, it would be beyond common sense to call into special session the Legislature for the express purpose of closing a season which had theretofore been declared open by statute to preserve and save from extinction some species of game or fish. * * *"

We conclude, therefore, that the control over fish and game is a proper subject for delegation of legislative power.

Nonetheless, appellant urges that it is not permissible to place in the hands of an administrative agency the power to change criminal statutes.

In *State* v. *Messenger*, 63 Ohio St. 398, the question of unlawful delegation of legislative authority was presented to this court in connection with a statute which made it unlawful to transport over certain roads "a burden of more than two thousand pounds" in any vehicle having a tire of less than three inches in width. The statute empowered county commissioners by regulation to prescribe different weight limits for vehicles having a tire width of three inches or upwards and made it a misdemeanor for anyone to violate either the act or regulation adopted thereunder.

In the court's opinion, at page 401, Judge Minshall reasoned:

"* * * It will thus be observed that the commissioners do not prohibit any one from transporting a greater weight than is fixed by them in any case, nor do they fix a penalty for so doing. This is done by the statute. It is the statute that prohibits the transporting of a greater weight than is fixed by them, and it is the statute that imposes the penalty on any one for so doing. The commissioners in the exercise of an administrative function conferred on them by the Legislature, simply determine the increased weight that may be transported in vehicles having a tire of three inches or upwards. When this has been done by them, the law prohibits the carrying of burdens in excess of the weight so fixed, and adds a penalty for its violation. The regulations of the commissioners without the provisions of the law would be of no effect whatever. Nothing, in law, would be prohibited, and no penalty would be incurred by anyone in disregarding the regulations of the commissioners. It seems then clear that the commissioners of the county, in acting under this statute, do not act in a legislative capacity. The penalty that is imposed for the violation of a law is a part of its very essence. Take away the penalty, or the sanction of the law, and it is no law. * * * The commissioners only determine the facts on which the law is to operate; and as said by Agnew, J., in *Locke's Appeal*, 72 Penn. St., 491: 'The Legislature cannot delegate its power

to make a law; but it can make a law to delegate power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' *Gordon* v. *State*, 46 Ohio St., 607; *Railroad Co.* v. *Commissioners*, 1 Id., 77.''

In the present case, the Chief of the Division of Wildlife does not establish or change a criminal statute. The statute itself proscribes the possession of undersized fish and provides the penalty for violation of the statute. The Chief of the Division of Wildlife determines only the state of facts upon which the provisions of the statute imposing the penalty are to apply.

Thus, in our view there is no merit to the argument that there has been an unlawful delegation of authority or that the Chief of the Division of Wildlife has improperly changed a criminal statute.

We come then to the question whether R. C. 1533.63 and 1533.301 apply to the acts of appellant in transporting the fish within this state.

R. C. 1533.63 reads, in part:

''Except as otherwise provided by the Chief of the Division of Wildlife, no person shall take, catch, or possess * * * walleye less than thirteen inches in length. All such fish caught or taken of a weight or length less than that prescribed in this section or as may be provided by the Chief of the Division of Wildlife shall be immediately released alive with as little injury as possible while the nets are being lifted or hauled.''

Examination of this section reveals that its purpose is to regulate commercial fishing within this state. In fact, the section provides:

''This section does not prohibit the catching, taking, or having in possession such undersized fish when caught or taken with hook and line, other than a trotline, but when such fish are so taken, they cannot be bought or sold. * * * ''

The statute provides further that ''No person shall buy, sell, offer for sale, transport, or possess a fish caught

in any manner prohibited or a fish caught or taken unlawfully outside the state. *All fish brought into the state from another state or country shall be subject to the laws of this state."* (Emphasis added.)

In respect to the issue of whether R. C. 1533.63 applies, appellee cites *Roth* v. *State*, 51 Ohio St. 209, in which the syllabus reads:

"It is an offense, under Section 6964 of the Revised Statutes, to sell quail in this state, except between the tenth day of November and the fifteenth day of December, though such quail were killed outside of the state, and where it was lawful to kill the same. The section is constitutional."

Appellee argues that Section 852b, Title 16, U. S. Code, which concerns regulation of interstate transportation of black bass and other fish is applicable to this case. That section reads as follows:

"All such black bass or other fish transported into any state, territory, or the District of Columbia for use, consumption, sale, or storage therein shall upon arrival in such state, territory, or the District of Columbia be subject to the operation and effect of the laws of such state, territory, or the District of Columbia to the same extent and in the same manner as though such fish had been produced in such state, territory, or the District of Columbia, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

Thus, it is clear from the language of R. C. 1533.63, the *Roth case* and Section 852b, Title 16, U. S. Code, that R. C. 1533.63 can be applicable to fish brought into this state.

Furthermore, it is clear that in enacting statutes regulating interstate transportation of black bass and other fish Congress intended to provide national regulation for the protection of such fish and thus pre-empted the states from enacting legislation contrary to that national regulation, but only so long as such fish are a part of interstate commerce.

This is apparent from an examination of Section 854, Title 16, U. S. Code, which reads:

"Nothing in this Act [Sections 851-856] shall be construed to prevent the several states and territories from making or enforcing laws or regulations not inconsistent with the provisions of this Act, or from making or enforcing laws or regulations which shall give further protection to black bass and other fish."

Applying the federal statutes, we find that under Section 852b, Title 16, U. S. Code, Ohio's statutes cover fish brought into the state once the fish are within the state "for use, consumption, sale or storage therein * * *."

Thus, the burden was on the state to show that the fish were brought into Ohio "for use, consumption, sale or storage therein * * *."

Appellant testified, on cross-examination, that he intended to take the fish to Morrow, change the water in the tanks without unloading them, and get on the telephone and try to find a buyer. Appellant admitted that he was hoping that he might sell the fish in Ohio but indicated that he had sold a lot of fish in Kentucky, and as recently as the previous week. He testified that he had nobody in mind as a buyer and he didn't know who was going to buy this load of fish.

Thus, the evidence did not unequivocally establish the fact that appellant was going to sell the fish in Ohio. It was not shown that at the time of appellant's arrest the fish he had in his possession were "for use, consumption, sale or storage" within this state. The fish being transported were still in interstate commerce, and, under the provisions of Section 852b, Title 16, U. S. Code, appellant therefore was not subject to prosecution under R. C. 1533.-63, and his conviction must be set aside.

Similarly, appellant's conviction for transportation of fish without a permit must also be reversed, as R. C. 1533.-301(A), excepts from its provisions "fish transported from a point outside this state to another point outside this state, if such fish are not unloaded in this state." The

fish were not unloaded, and it was not established by the evidence that they were to be unloaded.

From the evidence in the record before us neither R.C. 1533.63 nor R. C. 1533.301 is applicable to the acts of appellant in transporting the fish herein involved, and the convictions for violation of those sections were void. Therefore, the judgment of the Court of Appeals is reversed and the defendant is discharged as to each conviction.

*Judgment reversed.*

O'NEILL, C. J., and LEACH, J., concur.*

SCHNEIDER, J., concurs in paragraphs two and three of the syllabus and in the judgment.

HERBERT, J., concurs in the syllabus and in the judgment.

DUNCAN, J., dissents.

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

---

*CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.