THE STATE OF OHIO, APPELLANT, *v.* ABDULLA, APPELLEE.[*]

(No. 7187—Decided August 1, 1973.)

*Mr. Stephan M. Gabalac*, prosecuting attorney, for appellant.

*Mr. Alexander E. Teodosio* and *Mr. Robert C. Meeker*, for appellee.

---

[*]Appeal dismissed (No. 73-815), November 29, 1973.

HUNSICKER, J. An appeal has been lodged in this court by the state of Ohio from a judgment entered in the Court of Common Pleas of Summit County which was rendered by a visiting judge of such court who was sitting by special assignment.

The defendant (appellee), Edward Abdulla, was indicted on June 28, 1972, and charged with four counts of "sale of security without a license," and four counts of "sale of unregistered security." These offenses are a part of R. C. Chapter 1707.

After various preliminary activities by Abdulla, he filed eight motions directed to the indictment and other matters, preliminary to trial. Two of the motions were sustained, and the others resulted in an action favorable to the state of Ohio.

The state of Ohio filed a notice of appeal after leave to appeal was granted by this court.

The judgment to which the prosecuting attorney takes exception, and which is the basis of the appeal to this court, is, in its pertinent part, as follows:

"(1) Motion No. 1 is granted, and the court dismisses the indictment for the reasons that the Ohio Revised Code, Section [sic] 1707 is arbitrary and unreasonable.

"(2) The court dismisses the indictment on Motion No. 2, for the reason that it is in violation of the equal protection clause, as set forth in the federal Constitution, and in Article No. 2, Section 26 of the Ohio Constitution."

The state of Ohio says that:

"I. It was error to quash the indictment and to find Ohio Revised Code Chapter 1707 unconstitutional because it is arbitrary, capricious, and unreasonable.

"II. It was error to quash the indictment and to find that there had been selective enforcement under Ohio Revised Code Chapter 1707 that amounted to an equal protection violation in this case.

"III. It was error to allow the defendant, Edward Abdulla, to change his plea from guilty to no [sic] guilty."

This case, as well as thirteen other similar cases, arose out of a scheme concocted by an Akron lawyer, D. Don Low-

84

ers, who was later incarcerated in a Federal prison. Lowers claimed that he purchased unclaimed goods of various kinds from freight haulers and sold this merchandise at a great profit. Many persons in the Akron area loaned him money which, until the scheme collapsed, he would repay with high interest for short term loans. He gave notes bearing a lawful rate of interest, but the repayment would, many times, amount to from 15% to 30% interest. He was able to do this by borrowing from one lender to pay previous lenders. Edward Abdulla, and other persons, numbering 50 to 65, assisted in the scheme by selling notes, signed by Lowers, to various people in Summit County. During the nine years (1963 to 1972) that Lowers conducted his fraudulent enterprise, 1100 to 1500 people loaned him $11,000,000, or more, in order to get the exorbitant interest he promised.

Of the many who engaged in selling Lowers' notes, only 14 persons were indicted for a violation of R. C. 1707.-44. It is clear that these people did not know of the nefarious scheme Lowers was fostering.

We do not find prejudicial error in the trial court's permitting Abdulla to change his plea before a trial was begun. R. C. 2943.03. We reject assignment of error number III.

We shall discuss assignments of error numbers I and II jointly, because of their interrelation. We adopt herein the memorandum opinion issued this day in the case of *State* v. *Steurer*, No. 7166, and in cases 7167, 7168, and 7169, which bear on this action since all such cases have arisen out of the Lowers fiasco. That memorandum covers the matter of selective and discriminatory enforcement, which we do not find constitutionally impermissible herein.

Motion No. 1, which was made by defendant and sustained by the trial court, referred to Chapter 1707, Ohio Revised Code, and not to "Ohio Revised Code, Section 1707," as stated in the journal entry. The journal entry referred to above, which was approved by counsel for all parties and the trial judge, is obviously in error and should be amended to speak the truth, since all briefs argue the

point in issue. Is Chapter 1707, Ohio Revised Code, arbitrary and unreasonable and, thus, unconstitutional?

Motion No. 2 then raises the question of discriminatory enforcement of the penal sections of Chapter 1707. Is there, in this case, a constitutionally impermissible discrimination in the enforcement of Chapter 1707. The Steurer opinion, which we adopt herein, says that there was no impermissible discrimination in the selection of the 14 violators.

R. C. Chapter 1707 covers the subject of securities, their sale, regulation, and registration for sale in this state. R. C. 1707.23 defines the enforcement powers of the division of securities. This section, in part, provides:

"Whenever it appears to the division of securities, from its files, upon complaint, or otherwise, that any person has engaged in, is engaged in, or is about to engage in any practice declared to be illegal or prohibited by sections 1707.01 to 1707.45, inclusive, of the Revised Code, or defined as fraudulent in such sections, or any other deceptive scheme or practice in connection with the sale of securities, or when the division believes it to be in the best interests of the public and necessary for the protection of investors, the division may:

"* * * *

"(E) Initiate criminal proceedings under section 1707.44 of the Revised Code by laying before the prosecuting attorney of the proper county any evidence of criminality which shall come to its knowledge; and in the event of the neglect or refusal of the prosecuting attorney to prosecute such violations, the division shall submit such evidence to the attorney general, who may proceed in the prosecution with all the rights, privileges, and powers conferred by law on prosecuting attorneys, including the power to appear before grand juries and to interrogate witnesses before such grand juries * * *."

There are six other provisions in R. C. 1707.23 for the enforcement of claimed illegal or irregular activities on the part of those against whom a complaint is made. The division of securities, by this statute, has broad power to initiate criminal proceedings.

The division of securities of Ohio, after a complaint

and investigation was made, divided the violators into three categories. Lowers, who was the perpetrator of the scheme, was placed in category number one. As to the second category, the director of commerce (under whose direction the division of securities operates), Mr. Shaul, said:

"* * * There was a second class of people, how broad the dimensions were to be, is a discretionary judgment made by the prosecutor and the grand jury in this instance. That class of people are those who had in some instances operated as though they were engaged in a business of being lenders to the operation or had engaged to the extent that they differentiated themselves at least from the third class of people, those who were involved in the scheme and who may have been involved in a felony violation technically, but who had not conducted or as a business been engaged in the activity in the same manner that class two or Lowers himself had been."

The persons in the third group were neither prosecuted nor recommended for prosecution. There were some statements by counsel, and Mr. Shaul, that other similar offenses (unrelated to these cases), arising in this community, were not recommended for prosecution, based largely on the broad discretionary terms of R. C. 1707.23 and the equal discretion lodged in the division of securities as to whom to recommend for prosecution. Thus, out of 65 violators of the law in the Lowers matter, as stated by the principal investigator of the division of securities assigned to this case, a few were selected to be indicted. As indicated in the transcript of proceedings, only those persons with ten or more sales were brought to court. Those with nine sales or less apparently escaped the fate of these defendants.

Mr. Horden, who was the investigator for the division of securities assigned to this case, and whose testimony was taken in the case of Steurer and others, was before the trial court herein by agreement of counsel, and he testified as to the number of people who were involved in disposing of the Lowers' notes to others. Mr Horden said, in part:

"Q. Now, what else did that investigation reveal, sir?
"A [Thomas E. Horden]. In what area?

"Q. Well, it was a very general question. I would like you to answer it completely. Did that investigation reveal anything else to you?

"A. Yes.

"Q. All right. Tell the ladies and gentlemen of the jury what it revealed.

"A. Well, it revealed that many of the transactions that were entered into and the various dispositions of securities was entered into, was participated by as many as approximately 65 various people.

"Q. All right. When you say 65 various people, what did your investigation reveal that these 65 people were doing?

"A. Well, they were disposing or assisting Mr. Lowers in placing these various securities.

"Q. Other people that were doing the same thing that Jack Steurer is charged with doing?

"A. That is correct.

"Q. There were some 65 of them?

"A. That is correct."

The justification for the selection of 14, out of 65 or more, probable violators, is, according to the plaintiff (appellant), that the 14 were in the "business" of selling securities, although R. C. 1707.44 makes no such distinction. The 14 violators sold more Lowers' notes than some other violators.

We do not deem it necessary to set out verbatim herein Section 2 of Article I of the Ohio Bill of Rights; Section 26 of Article II of the Constitution of Ohio; and the Fourteenth Amendment to the Constitution of the United States. It is the above portions of our fundamental law that are the basis for the claim that there has been herein a constitutionally impermissible prosecution of the defendant (appellee). The above sections relate to the requirement that all laws have a uniform application, and no person in this country shall be denied the equal protection of its laws.

The state of Ohio, as appellant herein, insists that the trial judge was in error when he quashed the indictment against Edward Abdulla "for the reasons that the Ohio

Revised Code, Section [sic] 1707 is arbitrary and unreasonable."

The parties, in their briefs, argue the question of an unlawful delegation of legislative power granted by R. C. 1707.23.

As early as 1916, in *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, the court determined that dealers in corporate securities could not successfully urge against the validity of the then existent securities law of Ohio the making of a license a condition precedent to dealing in corporate securities.

The specific section under attack herein provides for the manner by which the law pertaining to the sale of securities may be enforced. This is a proper subject for legislative delegation of administrative functions. Modern government could not operate without the power of the legislature to delegate administrative duties. The many boards and commissions for state and national governments to carry on their work have given rise to a new body of law, which, in the early days of the nation, was neither needed nor desired.

In *Matz* v. *Curtis Cartage Co.*, 132 Ohio St. 271, at 279, the court said:

"It is an accepted doctrine in our constitutional law that the law-making prerogative is a sovereign power conferred by the people upon the legislative branch of the government, in a state or the nation, and cannot be delegated to other officers, board or commission, or branch of government. Thus neither the Congress of the United States nor the General Assembly of Ohio can delegate its legislative power, but may confer administrative power on an executive, a board or commission."

It was further determined by the court in that case (seventh paragraph of the syllabus), that:

"As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impos-

sible or impracticable to provide such standard, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations"

Delegation of power to an administrative board has been approved in *State* v *Switzer*, 22 Ohio St. 2d 47; *State* v. *Schreckengost*, 30 Ohio St. 2d 30; *American Woodenware Mfg. Co.* v. *Schorling*, 96 Ohio St. 305; and *Yee Bow* v. *Cleveland*, 99 Ohio St. 269.

In the delegation of power to an administrative agency, the test should be: does such delegation relate to execution?

Thus, in *State, ex rel. Krieg*, v. *Matia*, 138 Ohio St. 504 at 507, the court said that: "* * * while the Legislature may not delegate its power to make a law, it may make a law to become operative on the happenings of a certain contingency, or a future specified event."

In a very early case, Chief Justice John Marshall said, in *Wayman* v. *Southard*, 10 Wheaton 1 at 42, 6 L. ed 253 at 262:

"It will not be contended that Congress can delegate to the Courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself."

This rule is found in the well stated language of *Cincinnati, Wilmington and Zanesville R. R. Co.* v. *Commissioners*, 1 Ohio St. 77 at 82, 83 (a landmark case on the power of the legislature to delegate functions of government).

"But while the right and duty of interference in a proper case, are thus undeniably clear, the principles by which a court should be guided, in such an inquiry, are equally clear, both upon principle and authority. It is never to be forgotten, that the presumption is always in favor of the validity of the law; and it is only when manifest assumption of authority, and clear incompatability between the constitution and the law appear, that the judicial power can refuse to execute it. Such interference can never be per-

mitted in a doubtful case. And this results from the very nature of the question, involved in the inquiry.

"The Legislature is, of necessity, in the first instance, to be the judge of its own constitutional powers. Its members act under an oath to support the constitution, and in every way, under responsibilities as great as judicial officers. Their manifest duty is, never to exercise a power of doubtful constitutionality. Doubt, in their case, as in that of the courts, should be conclusive against all affirmative action. This being their duty, we are bound, in all cases, to presume they have regarded it; and that they are clearly convinced of their power to pass a law before they put it in the statute book. If a court, in such case, were to annul the law, while entertaining doubts upon the subject, it would present the absurdity of one department of the government overturning, in doubt, what another had established, in settled conviction; and to make the dubious constructions of the judiciary, outweigh the fixed conclusions of the General Assembly. * * *"

At page 88, the court stated:

"* * * The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Of course, standards for the guidance of the executive or administrative body must be given in the legislative enactment. We believe that R. C. 1707.23 does fix guidelines and rules to follow in the enforcement of the securities law. This law is not a prohibition against the sale of securities, but it is a regulation of their sale for the protection of the buyer of securities. It seeks to prevent fraud in the disposition of securities, and, to that end, the legislature established broad powers of administration. There can be no question that laws to prevent fraud in the sale of securities are necessary for the public and are a valid exercise of the police power.

The securities law, R. C. Chapter 1707, particularly R.

C. 1707.23 is not an arbitrary, capricious or unreasonable law.

We have examined the errors assigned herein and determine that the trial court committed error prejudicial to the rights of the state of Ohio as to assignments of error I and II, and the judgments on such assignments are reversed.

As to assignment of error III, we find no error of a prejudicial nature.

The judgment dismissing the indictment is reversed, and the case is remanded to the trial court for further proceedings.

*Judgment reversed.*

BRENNEMAN, P. J., and VICTOR, J., concur.

HUNSICKER, J., retired, was assigned to active duty under authority of Section 6 (C), Article IV, Constitution.