**The STATE of Ohio, Appellee,**

**v.**

**SCHACHNER, Appellant.**

[Cite as *State v. Schachner* (1999), 131 Ohio App.3d 808.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1388.

Decided Jan. 29, 1999.

*Betty D. Montgomery,* Attorney General, *Brad L. Tammaro* and *Robert J. Cochran,* Assistant Attorneys General, for appellee.

*Richard M. Kerger,* for appellant.

KNEPPER, Judge.

This is an appeal from the judgment of the Lucas County Court of Common Pleas, which, following a jury trial, found appellant, Sheldon J. Schachner, guilty of violating an order of the Director of Environmental Protection to obtain a detailed chemical and physical analysis of a representative sample of waste, in violation of R.C. 3734.11 and 3734.99, and recklessly storing hazardous waste, in violation of R.C. 3734.02(F), 3734.11, and 3734.99, both being unclassified felonies. Appellant's concurrent sentence of two years of incarceration on each count was suspended, and he was fined a total of $25,000. The trial court's judgment entry of sentencing was journalized October 8, 1997.

Appellant timely appealed his conviction and sentence and raised the following assignments of error:

"Assignment of Error No. 1. When the State predicates criminal liability on an omission to accomplish an act, it is incumbent upon the State to prove beyond a reasonable doubt that the act was one which the defendant was capable of performing.

"Assignment of Error No. 2. Delegation to the Director of the Ohio Environmental Protection Agency of the right to issue orders, the violation of which becomes criminal, is unlawful and unconstitutional because of the absence of standards which those orders must follow.

"Assignment of Error No. 3. The State cannot criminalize the failure to do a vain and unnecessary act.

"Assignment of Error No. 4. The State cannot impose criminal liability upon the defendant for the failure to correct a condition created by others.

"Assignment of Error No. 5. The Court failed to recognize in its instructions to the jury the difference between environmental waste which had been abandoned on the defendant's property as opposed to 'stored' on his property."

Appellant was indicted on February 24, 1997, regarding certain solid and hazardous waste located on his property at 2221 Lorle Street, Toledo, Ohio. Appellant was indicted on five counts: (1) knowingly attempting to dispose of hazardous waste, in violation of R.C. 2923.02, 3734.02(f), 3734.11, and 3734.99; (2) unlawfully and recklessly violating an order of the Director of Environmental Protection to obtain a detailed chemical and physical analysis of a representative sample of wastes that had been stored at 2221 Lorle Street, Toledo, Ohio, in violation of R.C. 3734.11 and 3734.99; (3) knowingly attempting to dispose of solid waste in a manner and/or location other than a sanitary landfill, in violation of R.C. 2923.02, 3734.11, and 3734.99, and Ohio Adm.Code 3745-27-05(A); (4) unlawfully and recklessly transporting or causing the transportation of hazardous waste to premises other than those listed in R.C. 3734.02(F)(1) through (5), in violation of R.C. 3734.02(F), 3734.11, and 3734.99; and (5) recklessly storing hazardous waste at premises other than those listed in R.C. 3734.02(F)(1) through (5), in violation of R.C. 3734.02(F), 3734.11, and 3734.99. The jury trial commenced on September 22, 1997.

Generally, the testimony at trial established that appellant had rented the property to Muller, who had a painting business. Muller left the property in 1991 or 1992, owing approximately two months worth of rent, about $1,000 per month. Appellant discovered within a couple of months of Muller's departure that a number of fifty-five-gallon drums had been left on the property.

In 1994, the Ohio Environmental Protection Agency ("E.P.A.") discovered the barrels on appellant's property and had a representative sampling done. The E.P.A. determined that there were nineteen fifty-five-gallon drums and a number of buckets or containers ranging up to five gallons in size. The E.P.A. found the barrels to be in fair to poor condition, with some of the barrels being tipped on their side and some being rusted shut. The barrels and buckets contained of two types of material: a sandy material and a liquid material that had an odor of

paint thinner to it. An analysis of the material established that the sandy material was not hazardous; therefore, the E.P.A. considered it to be merely solid waste. The liquid material, however, had flash points between fifty-six and sixty-one degrees Fahrenheit. A flash point below one hundred forty degrees Fahrenheit is considered hazardous. Therefore, the E.P.A. concluded that the liquid material was hazardous waste.

In September 1995, Edward D'Amato of the E.P.A. informed appellant that as the owner of the property, he had the responsibility to have the barrels tested and properly disposed of in a licensed facility. Although some of the barrels had been tested, further analysis was necessary in order to properly dispose of the materials. Any licensed disposal facility would have to know what the materials' characteristics were prior to disposing of them. Additionally, the E.P.A. was initially unable to open all of the barrels for testing.

A letter was sent to appellant in September 1994, stating that appellant had to properly test and dispose of the material and send the test results and the manifest associated with the disposal to the E.P.A. An additional letter was sent by the E.P.A. to appellant in October 1994, and a meeting was held at the property on October 14, 1994. But for one incident, appellant consistently asserted that the barrels were Muller's responsibility and that the E.P.A. should go after him. Appellant also stated that he had no intention of disposing of the material.

In June 1995, appellant was notified by letter that the Director of Environmental Protection had issued final findings and orders regarding appellant's property. Appellant was informed that he could appeal to the Environmental Board of Review within thirty days after receiving notice of the director's action. The director found that several drums had been abandoned at the property and that ignitable hazardous waste was being stored there. The director ordered that appellant do the following: (1) obtain a detailed chemical and physical analysis of a representative sample of each of the wastes at the facility within thirty days of the effective date of the orders, (2) submit to the E.P.A. the results of the waste analysis and a schedule for the removal of all identified hazardous waste at the facility within forty-five days of the effective date of the orders, (3) remove all hazardous wastes (including all drums and containers) from the facility in accordance with R.C. Chapter 3734 and the rules promulgated thereunder within sixty-five days of the effective date of the orders and comply with the manifesting, packaging, labeling, marking, and placarding requirements of Ohio Adm. Code 3745–52–20 through 3745–52–33, and (4) provide the E.P.A. with documentation of compliance with the third order within seventy-five days of the effective date of the orders. The director also made a number of orders regarding a sampling and analysis plan for all the areas at the facility where hazardous

wastes were illegally stored; however, a sampling and analysis plan is not at issue here.

In August 1995, seventeen of the nineteen fifty-five-gallon drums were found in a broken-down U–Haul truck. John Henley testified that he had been hired by Claude Barnhill to assist in the removal of the barrels. Two of the barrels were left at the property because they were empty. The E.P.A. was called to deal with the U–Haul and the barrels because one of the drums was leaking a fluid that smelled of paint thinner. D'Amato determined that the barrels were the ones from the Lorle Street property because they bore the markings placed on them by the E.P.A. Further testing by the E.P.A. revealed that liquid material in one of the barrels had a flash point of seventy degrees Fahrenheit, i.e., it was hazardous. Ultimately, it cost the state $15,000 to dispose of the solid and hazardous material from the Lorle Street property.

Through testimony, it was established that appellant never tested the barrels, drums, or other containers. Additionally, the Lorle Street facility was not authorized or licensed to store solid or hazardous waste. Finally, the persons who transported the barrels in the U–Haul were not licensed to transport or dispose of hazardous waste.

The jury found appellant guilty of Counts Two and Five of the indictment and found him not guilty of Count One, attempting to dispose of hazardous waste, Count Three, attempting to dispose of solid waste, and Count Four, transporting or causing the transportation of hazardous waste. It is from this conviction that appellant appeals.

In his first assignment of error, appellant argues that in order to obtain a conviction for failing to do a required act, the state must prove beyond a reasonable doubt that the act was one that appellant was capable of performing. The state responds that financial incapability is an affirmative defense that appellant must prove.

In order for a person to be held criminally liable, both of the following must apply:

"(1) His liability is based on conduct which includes either a voluntary act, *or an omission to perform an act or duty which he is capable of performing;*

"(2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." (Emphasis added.) R.C. 2901.21(A).

R.C. 3734.11(A) states that "[n]o person shall violate any section of this chapter, any rule adopted under it, or any order issued under section 3734.13 of the Revised Code." R.C. 3734.13(A) states:

"The director of environmental protection may issue, modify, suspend, or revoke enforcement orders in accordance with Chapter 3745. of the Revised Code * * * directing the * * * person to abate a violation, or to prevent any threatened violation, of any section of this chapter * * * [or] rule adopted thereunder * * * within a specified, reasonable time."

Whoever recklessly violates any section of R.C. Chapter 3734 is guilty of a felony and shall be fined at least $10,000, but not more than $25,000, or imprisoned for at least two years, but not more than four years, or both. R.C. 3734.99(A).

Hence, with respect to appellant's failure to obtain a detailed chemical and physical analysis of a representative sample of waste, the state must demonstrate that appellant was capable of doing the act and that he recklessly failed to accomplish it.

Clearly, the material was capable of being tested, because the E.P.A. tested it. Appellant, however, contends that the state had to prove beyond a reasonable doubt that he was financially capable of having the material tested. Appellant has failed to cite any authority for his argument that financial ability must be demonstrated, and this court can find none.

Rather, we conclude that the state demonstrated that the act was capable of being performed, and if appellant was incapable of paying for the tests (which was not his position at trial), then that is an affirmative defense that he must prove. We liken this situation to that of a person who, charged with failing to exercise reasonable and ordinary control over his vehicle, claims that he was incapable of having control over the vehicle because he lost consciousness. In such a situation, a loss of consciousness operates as an excuse or justification for the conduct and, as such, constitutes an affirmative defense to criminal liability. See, e.g., State v. McCaw (Aug. 1, 1997), Montgomery App. No. 16202, unreported, 1997 WL 451359. Similarly, if appellant contends that he is incapable of performing an act that is generally capable of being performed, then the burden shifts to him to establish his affirmative defense. The state cannot require appellant to testify, and appellant's financial state is a matter within his personal knowledge.

Accordingly, we find that appellant must establish his incapability of paying for the test as an affirmative defense. No evidence was offered regarding appellant's inability to perform the requested acts. Therefore, we find appellant's first assignment of error not well taken.

In his second assignment of error, appellant argues that the Director of Environmental Protection had an unlawful and unconstitutional delegation of authority to issue orders because of the absence of statutory standards that those

orders must follow. Citing *State v. Switzer* (1970), 22 Ohio St.2d 47, 51 O.O.2d 69, 257 N.E.2d 908, appellant argues that the legislature can delegate authority to an administrative agency "so long as sufficient standards are set up in the statute authorizing the delegation." Appellant asserts that R.C. Chapter 3734 provides no guidance for how the director may issue orders dealing with improper handling and storage of hazardous waste.

In addition to the consideration of the adequacy of statutory standards and guidelines, *Switzer* held that the legislature cannot delegate an agency power to make a law:

"'As a general rule a law which confers discretion on an executive officer or board without establishing any standards for guidance is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations.'" *Switzer* at 50, 51 O.O.2d at 71, 257 N.E.2d at 911, quoting, *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 8 O.O. 41, 7 N.E.2d 220, paragraph seven of the syllabus.

Although an agency cannot make law, it is permissible for the legislature to delegate power to the agency to determine the facts on which the law is to operate. The court noted:

"'The penalty that is imposed for the violation of a law is a part of its very essence. Take away the penalty, or the sanction of the law, and it is no law.'" *Switzer* at 52, 51 O.O.2d at 72–73, 257 N.E.2d at 912, quoting, *Gordon v. State* (1889), 46 Ohio St. 607, 23 N.E. 63.

We find that R.C. Chapter 3734 provides adequate guidelines and standards that the director is to follow. R.C. 3734.13 grants the director the authority to issue orders "to abate a violation, or to prevent any threatened violation, of any section of this chapter other than sections 3734.90 to 3734.9013 of the Revised Code, a rule adopted thereunder, or a term or condition of a permit, license, or variance issued thereunder within a specified, reasonable time." Ohio Adm.Code 3745–65–13 and 3745–54–13 provide that before an owner or operator treats, stores, or disposes of any hazardous or nonhazardous wastes, he shall obtain a detailed chemical and physical analysis of a representative sample of the wastes. The director in this case issued an order requiring appellant to obtain such an analysis. R.C. 3734.11 states that no person shall violate an order issued under R.C. 3734.13. And R.C. 3734.99 establishes the penalty that will be imposed for violating R.C. 3734.11 and, consequently, an order issued under R.C. 3734.13.

The statute sets forth that the director is granted the authority to make orders to abate a violation, or to prevent any threatened violation, of any section of R.C. Chapter 3734 or a rule adopted thereunder, within a specified, reasonable time. R.C. 3734.13. Thus the director is limited in his authority to issuing orders relating only to violations of R.C. Chapter 3734 or any rule adopted thereunder.

Additionally, the director is not given the authority to make law; rather, the director is merely responsible for issuing orders regarding laws that are already established. As such, his authority is limited to executing and administering the law. Such a grant of authority is constitutionally permissible.

Accordingly, we find that the legislative grant of authority to the director to issue orders is not unconstitutional or improper. Appellant's second assignment of error is therefore not well taken.

█ Appellant asserts in his third assignment of error that the state cannot hold him criminally liable for failing to do a vain and unnecessary act. Appellant asserts, "It was stipulated by the parties that the testing done previously by the Ohio Environmental Protection Agency, and which furnished a basis for the findings of fact made by the Director in his June 14, 1995 decision, 'produced representative samples of all waste.'" Appellant argues that the testing was done and, therefore, he should not be held liable for failing to have the waste analyzed. We disagree.

The stipulation referred to both tests, samples taken while the barrels were at the property and samples taken from the U–Haul. It was the combination of these two laboratory results that produced representative samples of all wastes. An analysis of all the waste was needed before proper disposal could be accomplished. The initial testing was insufficient because not all of the barrels were tested, as some were rusted shut. Therefore, a representative sampling was not accomplished until the second test. The second test occurred after appellant had already failed to do the analysis himself. Thus appellant was not convicted of failing to do a vain act. Accordingly, his third assignment of error is not well taken.

█ In his fourth assignment of error, appellant argues that the state cannot impose criminal liability upon him for failing to correct a condition created by others. Appellant asserts that the prior tenant abandoned the barrels on the property. Appellant argues that to convict appellant for failing to remove the barrels abandoned by another is a violation of due process of law. We disagree.

Regardless of how the barrels got onto appellant's property, appellant was aware of the barrels and, despite numerous instructions to do so, failed to have them tested and continued to store them on his property in violation of Ohio law. Appellant was instructed numerous times, beginning in 1994, to have the barrels

tested and properly disposed of. It is also well established that he knew of the barrels' existence for over three years before the director ordered him to have them tested. Appellant was allowed an appeal of the director's order to the Environmental Board of Review, but failed to avail himself of that process.

Accordingly, we find that appellant was not convicted for the acts of another; he was convicted for his own reckless disobedience. We further find that appellant was not denied due process of law. Appellant's fourth assignment of error is therefore not well taken.

■ ˙ In his fifth assignment of error, appellant argues that the trial court failed to recognize in its instructions to the jury the difference between environmental waste that had been abandoned on the defendant's property as opposed to stored on his property. Appellant argues that the difference between abandoning waste and storing waste relates to the mental state of the actor, who must intentionally store property. Because there was no evidence showing that appellant had any intent to use those substances in the barrels, he did not store them. Rather, they were abandoned by another, and, therefore, appellant should not be convicted for failing to remove a hazard created by a third party.

R.C. 3734.01(M) defines "storage":

" 'Storage,' when used in connection with hazardous waste, means the holding of hazardous waste for a temporary period in such a manner that it remains retrievable and substantially unchanged physically and chemically and, at the end of the period, is treated; disposed of; stored elsewhere; or reused, recycled, or reclaimed in a beneficial manner."

"Waste" is any discarded material that is not excluded by the Ohio Adm.Code. Ohio Adm.Code 3745–51–02(A)(1). "Discarded material" is any material which is

"(a) Abandoned, as put forth in paragraph (B) of this rule; or

"(b) Recycled, as put forth in paragraph (C) of this rule; or

"(c) Considered inherently waste-like as put forth in paragraph (D) of this rule." Ohio Adm.Code 3745–51–02(A)(2).

Ohio Adm.Code 3745–51–02(B) states when waste is abandoned:

"(B) Materials are waste if they are abandoned by being:

"(1) Disposed of; or

"(2) Burned or incinerated; or

"(3) Accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned by being disposed of, burned, or incinerated."

" 'Disposal' means the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any solid wastes or hazardous waste into or on any land or ground or surface water or into the air." R.C. 3734.01(F).

Based on the definitions above, waste can be considered abandoned when it is stored. See Ohio Adm.Code 3745–51–02(B)(3). Hence, abandoned waste can also be stored waste. Even if the hazardous waste in this case was abandoned, it was not incinerated and it was not disposed of; therefore, it must have been stored. See Ohio Adm.Code 3745–51–02(B).

█  Although appellant did not cause the barrels to be on his property, once they were discovered, he did hold the hazardous waste on his property. Based on the definition of "storage," although hazardous waste that is being held for reuse is considered stored, there is no requirement that in order to be considered stored the waste must be kept for reuse. See R.C. 3734.01(M). As stated above, "storage" means that hazardous waste is temporarily being held "in such a manner that it remains retrievable and substantially unchanged physically and chemically" and eventually is treated, disposed of, or stored elsewhere. See *id.* That is precisely what occurred to this hazardous waste. Accordingly, appellant's fifth assignment of error is not well taken.

On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., SHERCK and KNEPPER, JJ., concur.