[1] The court recognizes that Marc Dann is now the Ohio Attorney General.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals a partial summary judgment and assessed penalty issued by the Wood County Court of Common Pleas for violations of Ohio's water pollution abatement statutes. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellant, Maurer Mobile Home Court, Inc., owns and operates a mobile home park near Bowling Green, Ohio. The park is serviced by a wastewater treatment plant, also owned by appellant. The plant treats sewage from the mobile home park, discharging the treated effluent into a ditch, which leads to a creek and ultimately into the Maumee River.
 {¶ 3} Ohio law prohibits the introduction of effluents such as that generated by appellant's treatment plant into the waters of the state absent a valid permit. R.C. 6111.04. In 1985, the state obtained a judgment against appellant for discharging pollutants without such a permit. As a result, appellant was ordered to, and did, obtain a National Pollutant Discharge Elimination System ("NPDES") permit from the director of the Ohio Environmental Protection Agency ("OEPA").
 {¶ 4} The NPDES permit was renewed in 1991. This permits set specific acceptable pollutant discharge levels and required appellant to submit to the OEPA a Sludge Management Plan, detailing the method appellant proposed to dispose of or use sludge generated by its treatment plant.
 {¶ 5} On December 31, 2003, appellee, Ohio Attorney General Jim Petro, on behalf of the OEPA, filed a complaint alleging that (1) appellant had modified its treatment plant without requisite permission of the OEPA; (2) beginning in January 1997 and continuing through the date of the complaint, appellant had discharged pollutants in excess of the levels permitted on hundreds of occasions; and (3) appellant had never submitted a Sludge Management Plan as directed in the 1991 NPDES permit. Appellee *Page 3 
sought a permanent injunction enjoining further violations and a statutory civil penalty for the violations of R.C. Chapter 6111
enumerated. Appellant answered, denying liability and asserting several affirmative defenses.
 {¶ 6} Following discovery, appellee moved for partial summary judgment on the issue of liability only. Appellant responded with a memorandum in opposition. On consideration, the court found appellee's motion for partial summary judgment well-taken on all three counts. In May 2006, the court held a hearing on remedy, following which, the court, in a 30 page judgment entry, assessed a total penalty of $62,902 and ordered appellant to make certain improvements to its wastewater treatment facility. From this judgment, appellant now brings this appeal.
 {¶ 7} Appellant sets forth the following nine assignments of error:
 {¶ 8} "ASSIGNMENT OF ERROR NO. 1
 {¶ 9} "The Trial Court Erred By Failing to Grant Defendant's Motion to Dismiss For Lack of Jurisdiction, Failure to State a Claim, and or Other Cause
 {¶ 10} "ASSIGNMENT OF ERROR NO. 2
 {¶ 11} "The Trial Court Erred In Failing to Apply RC 6112.
 {¶ 12} "ASSIGNMENT OF ERROR NO. 3
 {¶ 13} "The Trial Court Erred By Miscalculating the Penalty Based Upon the MORs.
 {¶ 14} "ASSIGNMENT OF ERROR NO. 4
 {¶ 15} "The Trial Court Erred in its Penalty Calculation by Retroactively, Including Days Before December 15, 2000. *Page 4 
 {¶ 16} "ASSIGNMENT OF ERROR NO. 5
 {¶ 17} "The Trial Court Erred By Retroactively Including Days in its Penalty Calculation Were Either Subject to Latches, Waived, or Estopped.
 {¶ 18} "ASSIGNMENT OF ERROR NO. 6
 {¶ 19} "The Trial Court Erred In Failing to Identify and Separately Calculate Which Violations (or Days of Violation) Violate Which Statutes.
 {¶ 20} "ASSIGNMENT OF ERROR NO. 7
 {¶ 21} "The Trial Court Erred in Granting Summary Judgment as to Count One of the Complaint.
 {¶ 22} "ASSIGNMENT OF ERROR NO. 8
 {¶ 23} "The Trial Court Erred in Granting Summary Judgment as to Count Two of the Complaint.
 {¶ 24} "ASSIGNMENT OF ERROR NO. 9
 {¶ 25} "The Trial Court Erred in Granting Summary Judgment as to Count Three of the Complaint."
 I. Applicable Law {¶ 26} Following the trial court's issuance of partial summary judgment, and prior to the hearing on remedy, appellant moved to dismiss, pursuant to Civ. R. 12 (B). Appellant argued that its system is statutorily a private sewer system and, as such, is only subject to enforcement brought under R.C. Chapter 6112, the statute concerning private sewage systems. Since this enforcement action was expressly brought pursuant to *Page 5 
R.C. Chapter 6111, appellant argued, it should be dismissed. The trial court's rejection of this proposition and its denial of the motion is the subject of appellant's second assignment of error.
 {¶ 27} Appellant offers similar arguments in its first assignment of error, maintaining that even if R.C. Chapter 6111 was applicable, appellee brought its complaint under the wrong provisions of that chapter. Appellee premised all of its claims on R.C. 6111.07. The proper provision for failure to obtain an installation permit, as delineated in Count 1, is R.C. 6111.44, according to appellant. Failure to submit a Sludge Management Plan, as alleged in Count 3, is governed by R.C. 6111.45, appellant insists. Appellant maintains that Count 2 is improper because R.C. 6111.01 through 6111.042 apply "only to `isolated wetlands.'"
 {¶ 28} Appellant provides us with no persuasive authority that the legislature intended R.C. Chapter 6112 to be the exclusive regulatory scheme for private wastewater treatment facilities. R.C. Chapter 6112
deals only with how such a system may come into being, R.C. 6112.02
(application process); R.C. 6112.03 (construction approval); R.C. 6112.04 (construction supervised by registered engineer), and the ability of county commissioners to acquire such a system. R.C. 6112.05. Other chapters deal with the organization and construction of other types of systems. R.C. Chapter 6115 (sanitary districts); R.C. Chapter 6117 (county sewer districts); R.C. 6119 (public regional water and sewer districts). None of these provisions touch on the operation of the respective facilities. That is in the purview of R.C. Chapter 6111. *Page 6 
 {¶ 29} Absent a permit, R.C. 6111.04 prohibits the discharge of sewage or sludge into the waters of Ohio. R.C. 6111.04 (A) (1) (2). R.C. 6111.07 provides for enforcement of the statutes and rules promulgated thereunder and, "* * * any order, rule, or term or condition of a permit issued or adopted by the director of environmental protection * * *." Thus, R.C. Chapter 6111 is the vehicle established for the enforcement of operating parameters established for systems built pursuant to R.C. Chapters 6112, 6115, 6117 and 6119.
 {¶ 30} Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 31} With respect to appellant's first assignment of error, "* * * the fundamental rule is that an appellate court will not consider any error, which could have been brought to the trial court's attention, and hence avoided or otherwise corrected." Schade v. Carniege Auto Body
(1982), 70 Ohio St.2d 207, 210, citing State v. Glaros (1960),170 Ohio St. 471, paragraph one of the syllabus. Appellant's arguments concerning whether R.C. 6111.07 is the proper provision under which to prosecute this action were not before the trial court and will be deemed waived. Accordingly, appellant's first assignment error is not well-taken.
 II. Summary Judgment {¶ 32} In its assignments of error Nos. VII through IX, appellant asserts that the trial court erred in awarding appellee partial summary judgment on each of the three counts of its complaint. *Page 7 
 {¶ 33} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 34} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ. R. 56(C).
 {¶ 35} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ. R. 56(E); Riley v. Montgomery (1984),11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248.
 {¶ 36} R.C. 6111.07 provides: *Page 8 
 {¶ 37} "No person shall violate or fail to perform any duty imposed by sections 6111.01 to 6111.08 of the Revised Code or violate anyorder, rule, or term or condition of a permit issued or adopted by the director of environmental protection pursuant to those sections. Each day of violation is a separate offense." (Emphasis added.).
 {¶ 38} Pursuant to R.C. 119.06 (C), the terms and conditions of the NPDES permit issued to appellant in 1991, continued beyond its 1996 expiration date, pending consideration of the renewal application. The permit requires appellant to submit monthly operating reports, demonstrating its compliance with the specific pollutant discharge levels set in the permit. The permit directs appellant to submit a Sludge Management Plan within three months of the permits 1991 effective date. Additionally, appellant must notify the director of OEPA, "* * * of any planned changes in the permitted facility * * *." R.C. 6111.44
requires that plans for such modifications be approved by the director prior to the initiation of construction.
 {¶ 39} Accompanying appellee's motion for summary judgment was an affidavit of a professional engineer and licensed wastewater operator employed by the OEPA, who averred that the agency had no record of a Sludge Management Plan submitted by appellant within three months of its 1991 permit or any other time. Moreover, the engineer reported that appellant had constructed three ponds connected to its treatment system and had neither notified the director of OEPA nor been granted his approval.
 {¶ 40} The OEPA engineer also averred that she had conducted a comparison analysis of the data in the monthly operating reports submitted by appellant and *Page 9 
permissible effluent parameters in appellant's NPDES permit. Between January 1997, and October 2005, according to the engineer, there are literally hundreds of occasions when appellant violated the permitted effluent limits or failed to submit required reports.
 {¶ 41} Appellant responded that it could not be held to the terms of the 1991 NPDES permit, because it never received the final permit. Moreover, the ponds it constructed were not a "modification" as the term is administratively defined; it applied for a construction permit, but the OEPA had never acted upon the application; it may not be held liable for exceeding discharge parameters due to "upsets;" and, the state should be estopped from enforcing the terms of the permit for its failure to act on the construction application.
 {¶ 42} The state responded with an affidavit of the OEPA's custodian of records, authenticating a document showing the 1991 permit was sent by certified mail to appellant on July 26, 1991, and a December 24, 1991 letter from appellant's Certified Wastewater Treatment operator stating that, "* * * we are currently operating under the new permit * * *." The state also noted that appellant admitted that it was subject to the terms of the permit in its answer to the state's complaint.
 {¶ 43} Since all of the state's allegations are premised in one respect or another on violations of the 1991 NPDES permit, it would be a material issue, precluding summary judgment, if this document were ineffective or invalid. Appellant insists that this is the case, supporting this assertion with the affidavit of its principal, James Maurer, who averred that appellant never received the final permit. *Page 10 
 {¶ 44} Unsupported and self-serving assertions in affidavits, standing alone and without supporting Civ. R. 56 evidence, however, are insufficient to demonstrate material issues of fact. Bell v.Beightler, 10th Dist. No. 02AP-569, 2003-Ohio-88, ¶ 33; Aeh v. MadisonTwp. Trustees, 4th Dist. No 03CA 2885, 2004-Ohio-2181, ¶ 40.
 {¶ 45} Arrayed against Maurer's affidavit are appellant's own admission in its answer, that it was subject to the terms of the permit, its acknowledgment that it received a draft of the permit (which was unchanged in final form), a copy of a cover letter from an OEPA official conveying the final permit and a 1991 letter from appellant's consulting engineer to the OEPA, acknowledging that the permit had been issued and that he had so advised Mr. Maurer.
 {¶ 46} It it is clear from this unrefuted evidence that appellant had actual knowledge of the issuance of the NPDES permit and its terms and conditions years prior to the allegations presently at issue. There is no evidence of record that, at any time prior to the initiation of this suit, appellant sought to appeal or otherwise protest these terms and conditions. As a result, it may not now be heard to raise its own inaction as a defense. Thus, the permit maintains full effect.
 {¶ 47} One term of the permit is that, within three months of its issuance, appellants submit to OEPA, a "Sludge Management Plan." The evidence is unrefuted that no such plan was ever submitted. Consequently, the trial court properly granted partial summary judgment on Count 3 of appellee's complaint and appellant's ninth assignment of error is not well-taken. *Page 11 
 {¶ 48} Appellant's NPDES permit requires that it provide notice to OEPA in advance, "* * *of any planned changes in the permitted facility * * *." R.C. 6111.44 prohibits changes to a plant, absent approval of OEPA. Ohio Adm. Code 3745-91-02 (A) (1) requires a permit to, "* * * establish or modify a solid waste disposal facility."
 {¶ 49} While appellant eventually applied for a permit for three ponds as part of its waste treatment program, it is undisputed that these ponds were already constructed and in use prior to the permit application. This constitutes a violation of the NPDES permit and both statutory and administrative provisions. That OEPA delayed for an incredibly long time in considering the application is not material. The violation occurred before the application was submitted. Accordingly, the trial court did not err in granting partial summary judgment on Count 1 and appellant's seventh assignment of error is not well-taken.
 {¶ 50} With respect to the violation of the effluent discharge standards, it is undisputed that appellant's monthly operating reports reveal numerous instances of measurements outside the permitted standards. In defense, appellant again argues that, since the final permit was never received, its terms are not binding and that some of the violations were due to "upsets."
 {¶ 51} We have already rejected appellant's argument with respect to the validity of its permit. Concerning appellant's assertion that its violations were the result of "upsets," appellant's NPDES permit incorporates the provisions of 40 C.F.R. 122.41(n) on this issue. Both the permit and the referenced CFR provision defines an "upset" as, *Page 12 
"* * *an exceptional incident in which there is unintentional and temporary noncompliance with technology based permit effluent limitations because of factors beyond the reasonable control of the permittee. An upset does not include noncompliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventive maintenance, or careless or improper operation."
 {¶ 52} The incorporated federal rule makes an "upset" an affirmative defense for which the permittee has the burden of proving through "contemporaneous operating logs, or other relevant evidence" that (1) an upset occurred and it's cause can be identified, (2) the facility was being properly operated at the time, (3) the permittee orally reported the upset within 24 hours, and (4) the permittee took timely remedial measures. 40 C.F.R. 122.41(n)(3)(i)-(iv).
 {¶ 53} Here, appellant referenced deposition testimony and exhibits disclosing what it maintained were 31 operational "upsets" and argued that many of the purported violations are multiples of the asserted upsets. Notwithstanding this assertion, it is undisputed that some, likely most, of the violations alleged occurred. Clearly, then, appellee was entitled to summary judgment on the liability question. That the trial court elected to sort out exact numbers in the context of the hearing on remedies is a prudent husbandry of judicial resources which we shall not disturb. Accordingly, appellant's eighth assignment of error is not well-taken. *Page 13 
 III. Penalty {¶ 54} R.C. 6111.07(A) prohibits the violation or breach of any duty imposed by specific statutes, rules or terms of a permit issued by the director of OEPA. The statute expressly makes each day of violation a separate offense. R.C. 6111.09 sets the civil penalty for a violation of R.C. 6111.07(A) at, "* * * not more than ten thousand dollars * * *." Below this ceiling, the amount of penalty to be imposed rests in the informed discretion of the court, State ex rel. Brown v. Howard (1981),3 Ohio App.3d 189, 191, and will not be the reversed absent an abuse of discretion. Id. at 192. An abuse of discretion is more than an error of law or a mistake of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d. 217, 219.
 {¶ 55} In this matter, the trial court opted to use the same analytical framework employed in State ex rel. Brown v. DaytonMalleable, Inc. (Apr. 21, 1981), 2d Dist. No. 6722, partially reversed on other grounds (1982), 1 Ohio St.3d 151, 158. In Malleable, the trial court adopted for guidance the civil penalty policy from the United States Environmental Protection Agency. BNA Environmental Reporter, April 21, 1978 at pages 2011, et seq. Those guidelines provide:
 {¶ 56} "Step 1 — Factors comprising Penalty
 {¶ 57} "Determine and add together the appropriate sums for each of the four factors or elements of this policy namely: the sum appropriate to redress the harm or risk of harm to public health or the environment, the sum appropriate to remove the economic *Page 14 
benefit gained or to be gained from delayed compliance, the sum appropriate as a penalty for violator's degree of recalcitrance, defiance, or indifference to requirements of the law, and the sum appropriate to recover unusual or extraordinary enforcement costs thrust upon the public.
 {¶ 58} "Step 2 — Reduction for Mitigating Factors
 {¶ 59} "Determine and add together sums appropriate for mitigating factors, of which the most typical are the following: the sum, if any, to reflect any part of the non-compliance attributable to the government itself, the sum appropriate to reflect any part of the non-compliance caused by factors completely beyond violator's control (floods, fires, etc.)
 {¶ 60} "Step 3 — Summing of Penalty Factors and Mitigating Reductions
 {¶ 61} "Subtract the total reductions of Step 2 from the total penalty of Step 1. The result is the minimum civil penalty." State ex. rel.Brown v. Dayton Malleable, Inc. (Apr. 2, 1981), quoting USEPA BNA Environmental Reporter at 2014.
 {¶ 62} The trial court also noted that a civil penalty, in order to deter violation of R.C. Chapter 6111, must be large enough to hurt the offender, State ex rel. Petro v. Tri-State Group, 7th Dist. No. 03 BE61,2004-Ohio-4441, ¶ 104, citing State ex rel. Celebrezze v. Thermal-Tron,Inc. (1992), 71 Ohio App.3d 11,19, and yet not so large as to result in the violator's bankruptcy. Dayton Malleable, 1 Ohio St.3d at 156.
 {¶ 63} With respect to Count 1 of appellee's complaint, the trial court found appellant in violation for failure to obtain a pond permit for 61 days, the time between *Page 15 
when OEPA notified appellant that it needed to file an application for a permit for its ponds and the time that one was filed. Because the ponds, properly constructed, would have actually had a beneficial effect on the environment, the court opted for a minimal civil penalty of $1 per day.
 {¶ 64} On Count 2, the court found 1,303 days in violation of permitted discharge levels between January 1, 1997, and October 31, 2003, the date of the complaint. The court noted that many of the violations were minor and that the affluent levels disclosed violations which, taken alone, would, "* * * not adversely affect the Maumee River." The Court found a $50 per day fine reasonable.
 {¶ 65} Concerning Count 3, the court found that appellant had failed to submit a Sludge Management Plan during the entire 2,556 day period covered under the complaint, but since OEPA was aware of appellant's sludge disposal practices and there was no evidence of damage to the environment or public health, a $2 per day fine was deemed appropriate.
 {¶ 66} The trial court found no economic benefit from the violations adjudicated in Counts 1 or 3. With respect to Count 2, the court determined that appellant should have spent $5,000 to improve the plant in 1997, adding $3,000 to civil penalties for the interest appellant saved by waiting nine years to make such improvements.
 {¶ 67} The court assessed no penalty for recalcitrance or indifference or for unusual enforcement costs. It reduced the daily civil penalty from $50 per day to $45 per day for discharge violations, and from $2 per day to $1 per day for failure to submit the *Page 16 
sludge management plan. This was due to the court's finding that the government should have been, "* * * more helpful in guiding [appellant] through the regulatory process."
 {¶ 68} The court found that what appellant asserted were operational "upsets," were, "* * * generally due to equipment failures or the failure to address rainfall inflow and infiltration problems," but concluded that one particular problem was the result of a neighboring farmer deliberately blocking appellant's drainage line. For this event, the court credited appellant 30 days, resulting in a total penalty of $62,902. The court then concluded that this amount was within appellant's ability to pay.
 {¶ 69} In its third assignment of error, appellant asserts that the trial court miscalculated the number of days of discharge violations because it counted 30 days of violation for measurements that were to be taken every 30 days and seven days of violation for measurements required every seven days. Appellant also asserts that violation days may not be found when reporting is required for measurements for which there are no limits set in the permit.
 {¶ 70} As appellee points out, appellant did not raise the 7/30 days issue before the trial court, waiving the matter for appeal. Schade v.Carnegie Auto Body, supra. Moreover, appellant provides us with no persuasive authority that its interpretation of the directive of R.C. 6111.07 that "each day of violation is a separate offense" is more valid than that employed by the trial court. It seems reasonable that a reading taken every seven days shows the status of events for each of those seven days. *Page 17 
 {¶ 71} With respect to the standard-dependent violations, the permit required reporting. If no report was made, it is a violation of the terms and conditions of the permit, therefore, a violation of R.C. 6111.07 (A). Accordingly, appellant's third assignment there is not well-taken.
 {¶ 72} In its fourth assignment of error, appellant insists that it should not be assessed a penalty for discharge violations prior to December 15, 2000, the day OEPA first notified appellant that it must bring its effluent into compliance with the NPDES permit. This is a specious argument. R.C. 6111.07 makes unlawful violation of the terms and conditions of the permit. The permit was issued in 1991, and its terms were never appealed. Consequently, OEPA could have sought penalty back to the date of the original issuance had it so chosen. Accordingly, appellant's fourth assignment is not well-taken.
 {¶ 73} Appellant maintains in its fifth assignment of error that the state should be barred from pursuing this action because of the doctrines of latches, waiver and estoppel.
 {¶ 74} The doctrine of latches is premised on the maxim that, "* * *equity aids the vigilant and not those who slumber on their rights." Black's Law Dictionary (6 Ed. Rev. 1990), 875. The essence of latches is estoppel. It is a species of equitable estoppel. Id. Estoppel, in general, does not apply against the state or its agencies in the exercise of a governmental function. Hortman v. City of Miamisburg,110 Ohio St.3d 194, 199, 2006-Ohio-4251, ¶ 25. The state cannot be estopped from its duty to protect the public welfare, because it failed to act as expeditiously as possible. Sekerak v. Fairhill Mental Health Ctr.
(1986), 25 Ohio St.3d 38, 39. *Page 18 
 {¶ 75} "It is well-settled that in the absence of a statute to the contrary, laches is generally no defense to a suit by the government to enforce a public right or protect a public interest. The principle that laches is not imputable to the government is based upon the public policy in enforcement of the law and protection of the public interest. To impute laches to the government would be to erroneously impede it in the exercise of its duty to enforce the law and protect the public interest. * * *." Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 146 (Citations omitted.)
 {¶ 76} Accordingly, appellant's fifth assignment error not well-taken.
 {¶ 77} In its remaining assignment of error, appellant complains that the trial court should have delineated the specific days on which violations occurred, relating to specific statutes. Appellant insists that it was an error to lump all the violations together, assuming a maximum statutory daily fine of $10,000 for each.
 {¶ 78} Since all of the violations alleged were stated as a violations of R.C. 6111.07 (A), all are subject to the maximum $10,000 daily fine found in R.C. 6111.09 (A). No additional delineation was required. Accordingly, appellant's sixth assignment there is not well-taken.
 {¶ 79} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
 JUDGMENT AFFIRMED. *Page 19 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., concur. *Page 1