The STATE of Ohio ex rel. OHIO ATTORNEY GENERAL, Appellee,

v.

LG DEVELOPMENT CORPORATION et al., Appellants.

[Cite as *State ex rel. Ohio Atty. Gen. v. LG Dev. Corp.,*
187 Ohio App.3d 211, 2010-Ohio-1676.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-09-1083.

Decided April 9, 2010.

Richard Cordray, Attorney General, and Amanda K. Sturm and Brian A. Ball, Assistant Attorneys General, for appellee.

V. Robert Candiello, for appellant.

HANDWORK, Judge.

{¶ 1} This appeal is from the February 19, 2008, June 19, 2008, February 27, 2009, and April 2, 2009 judgments of the Lucas County Court of Common Pleas, which granted summary judgment to appellee, state of Ohio, against appellants for violating rules and regulations of the Ohio Environmental Protection Agency ("EPA") set forth at R.C. 3734.01 et seq. and Ohio Adm.Code 3745 et seq. and granted appellee an injunction and civil penalties. Upon consideration of the assignments of error, we affirm in part and reverse in part the decision of the lower court. Appellants, LG Development Corporation, doing business as King of the Road Auto Parts; Victory Steel, L.L.C.; Mark Gorney; and Dale Gorney, assert the following assignments of error on appeal:

{¶ 2} "ASSIGNMENT OF ERROR NO. 1: The Trial Court erred in granting the State's Motion for Summary Judgment on certain Party Defendants and Counts I, II, III, XI & XII of its Complaint."

{¶ 3} "ASSIGNMENT OF ERROR NO. 2: The Trial Court's Entry and Order of Judgment awarding the State civil penalties against Defendants was erroneous and constituted reversible error, as the same was arbitrary [sic] unreasonable

[sic] and unconscionable, based on the evidence adduced at the penalty stage hearing."

{¶ 4} Appellee, state of Ohio, filed a 15–count civil complaint against four defendants on October 25, 2006. One of the defendants, LG Development Corporation, an Ohio corporation, operates a business under the name King of the Road Auto Parts. Furthermore, King of the Road Auto Parts operates two auto salvage yards, one on Angola Road in Holland, Ohio, and one on South Meilke Road in Holland, Ohio. The second defendant is Victory Steel, L.L.C., an Ohio limited liability company that owns the Angola Road salvage-yard property. The third defendant, Mark Gorney, owns the Meilke Road salvage-yard property. The fourth defendant, Dale Gorney, along with Mark Gorney, allegedly operates King of the Road Auto Parts. The business of King of the Road Auto Parts involves dismantling vehicles and the handling of oil, gasoline, anti-freeze, batteries, transmission fluids, and other unknown wastes.

{¶ 5} The complaint alleged that following an initial complaint investigation by the Ohio EPA on October 8, 2003, both facilities were inspected repeatedly (July 20 and September 13, 2004, and February 18, March 15, August 15, August 26, and December 5, 2005). The Ohio EPA inspectors found numerous containers and tanks of unlabeled and unevaluated wastes at both facilities. A September 14, 2004 testing revealed that at least eight of the drums contained hazardous wastes. Furthermore, the inspectors found that automotive fluids were released into the air and ground. None of the defendants had a permit to receive, store, or handle hazardous wastes at these facilities.

{¶ 6} The state asserted 15 counts against the defendants alleging that the facilities owned and operated by the defendants were hazardous-waste facilities that were not in compliance with the Ohio EPA rules and regulations set forth at R.C. 3734.01 et seq. and Ohio Adm.Code Chapter 3745 et seq. The state sought injunctive relief and civil penalties, as well as costs and fees. The state filed for summary judgment, which was granted by the trial court on February 19, 2008, without any specific findings. The defendants sought to have this order vacated, alleging that they had not been served notice of the state's motion. The court granted appellants leave to file their memorandum in opposition.

{¶ 7} Appellants opposed the motion for summary judgment, arguing that LG Development Corporation and Dale Gorney are not proper parties to this action. Appellants also argued that the two auto salvage yards are not hazardous-waste facilities.

{¶ 8} The state responded that appellants failed to meet their summary-judgment burden to prove that LG Development Corporation is a defunct corporation or that Dale Gorney was merely an employee. Furthermore, the state argued that there was sufficient evidence presented by way of an affidavit

from the EPA expert witness and Mark Gorney that there was hazardous waste on the property and that defendants did not have a permit to store or dispose of this hazardous waste.

{¶ 9} Both parties assert on appeal that following a hearing on April 21, 2008, regarding the motion to vacate, and after consideration of appellants' memorandum in opposition to the motion for summary judgment, the trial court adopted its February 19, 2008 order and again granted summary judgment to the state on June 19, 2008. However, we read this judgment as merely denying the motion to vacate and acknowledging that summary judgment had already been granted to the state in the prior February 19, 2008 judgment. The remainder of the June 19, 2008 judgment concerned the injunction remedy.

{¶ 10} A civil-penalties hearing was held on October 31, 2008. In a February 27, 2009 judgment and a nunc pro tunc judgment on April 2, 2009, the trial court awarded the state civil penalties of $61,862. An appeal was filed by all the defendants on March 27, 2009.

{¶ 11} In their first assignment of error, appellants argue that the trial court erred by granting summary judgment to the state against specific defendants regarding Counts I, II, III, XI, and XII of its complaint.

{¶ 12} The appellate court reviews the grant of summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, and *Advanced Analytics Labs., Inc. v. Kegler, Brown, Hill & Ritter*, 148 Ohio App.3d 440, 2002-Ohio-3328, 773 N.E.2d 1081, ¶ 33. Applying the requirements of Civ.R. 56(C), we uphold summary judgment when it is clear "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66–67, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 13} Pursuant to Civ.R. 56(C), the moving party "bears the burden of affirmatively demonstrating that, with respect to every essential issue of each count in the complaint, there is no genuine issue of fact." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, and *Harless* at 66, 375 N.E.2d 46. The nonmoving party has a reciprocal burden of specificity. Once the moving party has identified the issues when there is no genuine issue of material fact and has shown that the issue can be determined as a matter of law, the nonmoving party must come forward with specific facts to show that there is a genuine issue for trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, and *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798.

{¶ 14} In its complaint, the state alleged that Dale Gorney operates King of the Road Auto Parts. However, in its motion for summary judgment, appellee argued that Mark Gorney was the sole owner, operator, and manager of King of the Road Auto Parts. Furthermore, in the first paragraph of its motion for summary judgment, the state sought summary judgment against the "defendants." However, in the concluding paragraph, it stated that it was moving the court to grant summary judgment against the two corporations and Mark Gorney. There was no argument made regarding the liability of Dale Gorney. Nonetheless, the court granted summary judgment against all the defendants on February 19, 2008, without any specific findings.

{¶ 15} Appellants opposed the motion for summary judgment, arguing that LG Development Corporation and Dale Gorney are not proper parties to this action. They argued that LG Development Corporation was solely owned by Linn Gorney, who is deceased (as of April 29, 2006) and the corporation is a defunct corporation. Furthermore, they argued that Dale Gorney was only an employee of Victory Steel, L.L.C., and had no authoritative role. Because he had no control over the day-to-day operations of the business, appellants argue that he could not be held liable for the violations.

{¶ 16} The court noted in its June 19, 2008 judgment that summary judgment had been granted on February 8, 2008, without addressing the issues raised by appellants. Therefore, we presume that the court dismissed all of appellants' arguments opposing summary judgment.

{¶ 17} The only evidence in the record regarding Dale Gorney's role in this action comes from the answers to interrogatories and the testimony of Mark Gorney during his deposition. In the answers to interrogatories posed by the state, Mark Gorney stated that Dale Gorney, an employee, would have knowledge of discoverable matters regarding the allegations. In another answer, Gorney stated that Dale Gorney is merely an employee and that he does not supervise any of the business operations. Mark Gorney testified at his deposition that Dale Gorney is a cousin and works on a subcontracting basis.

{¶ 18} The state argued below and continues to argue on appeal that appellants failed to meet their burden of proof on summary judgment. We disagree. The state failed to meet its initial burden of demonstrating that there was no genuine issue of material fact as to Dale Gorney's liability in this case. We find no evidence in the record to support the allegations of the complaint against Dale Gorney. Even after appellants pointed out in their memorandum in opposition that there was no genuine issue of material fact that there was no basis for finding Dale Gorney liable in this action, the state did not come forward with any supporting evidence. Therefore, we find that the trial court erred in granting summary judgment to the state on the claims against defendant Dale Gorney.

█ {¶ 19} With respect to the grant of summary judgment against LG Development Corporation, we find that the trial court did not err. Although Mark Gorney testified that the corporation was no longer operating because of the death of the sole shareholder and officer, there was no evidence that the corporation had been dissolved. The state sufficiently supported its claim that LG Development Corporation was operating the business of King of the Road Auto Parts at the time the hazardous-waste violations occurred. Therefore, we find that summary judgment was appropriately granted against LG Development Corporation.

█ {¶ 20} Appellants next argue that summary judgment against any of them was not appropriate because the auto-salvage yard is not a hazardous-waste facility and, therefore, not all of the rules and regulations of Ohio's Hazardous Waste Laws apply in this case. Appellants' argument presents only a question of law and does not challenge the trial court's finding that there were no genuine issues of material fact.

{¶ 21} The state contends that appellants can be charged with violating R.C. 3734.02(E) and (F) by disposing of and storing hazardous wastes without a permit from the Ohio Environmental Protection Agency.

{¶ 22} R.C. 3734.01(F) defines disposal of hazardous waste as "the discharge, deposit, injection, dumping, spilling, leaking, emitting, or placing of any solid wastes or hazardous waste into or on any land or ground or surface water or into the air, except if the disposition or placement constitutes storage or treatment or, if the solid wastes consist of scrap tires, the disposition or placement constitutes a beneficial use or occurs at a scrap tire recovery facility licensed under section 3734.81 of the Revised Code."

{¶ 23} R.C. 3734.01(M) defines the storage of hazardous waste as "the holding of hazardous waste for a temporary period in such a manner that it remains retrievable and substantially unchanged physically and chemically and, at the end of the period, is treated; disposed of; stored elsewhere; or reused, recycled, or reclaimed in a beneficial manner. When used in connection with solid wastes that consist of scrap tires, 'storage' means the holding of scrap tires for a temporary period in such a manner that they remain retrievable and, at the end of that period, are beneficially used; stored elsewhere; placed in a scrap tire monocell or monofill facility licensed under section 3734.81 of the Revised Code; processed at a scrap tire recovery facility licensed under that section or a solid waste incineration or energy recovery facility subject to regulation under this chapter; or transported to a scrap tire monocell, monofill, or recovery facility, any other solid waste facility authorized to dispose of scrap tires, or a facility that will beneficially use the scrap tires, that is located in another state and is operating in compliance with the laws of the state in which the facility is located."

{¶ 24} R.C. 3734.02(E)(2) provides: "Except as provided in division (E)(3) of this section, no person shall establish or operate a hazardous waste facility, or use a solid waste facility for the storage, treatment, or disposal of any hazardous waste, without a hazardous waste facility installation and operation permit * * *." R.C. 3734.02(F) provides: "No person shall store, treat, or dispose of hazardous waste identified or listed under this chapter and rules adopted under it, regardless of whether generated on or off the premises where the waste is stored, treated, or disposed of, or transport or cause to be transported any hazardous waste identified or listed under this chapter and rules adopted under it to any other premises, except at or to any of the following: (1) A hazardous waste facility operating under a permit issued in accordance with this chapter; (2) A facility in another state operating under a license or permit issued in accordance with the 'Resource Conservation and Recovery Act of 1976,' 90 Stat. 2806, 42 U.S.C.A. 6921, as amended; (3) A facility in another nation operating in accordance with the laws of that nation; (4) A facility holding a permit issued pursuant to Title I of the 'Marine Protection, Research, and Sanctuaries Act of 1972,' 86 Stat. 1052, 33 U.S.C.A. 1401, as amended; (5) A hazardous waste facility as described in division (E)(3)(a) or (b) of this section."

{¶ 25} R.C. 3734.11 also provides that "[n]o person shall violate any section of this chapter, any rule adopted under it, or any order issued under section 3734.13 of the Revised Code."

{¶ 26} Ohio Adm.Code 3745–50–10(A)(39) defines a "facility" or "hazardous waste facility" as:

{¶ 27} "(a) *All contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of hazardous waste.* A facility may consist of several treatment, storage, or disposal operational units (e.g., one or more landfills, surface impoundments, or combinations of them)." (Emphasis added.)

{¶ 28} It is clear that these statutes provide that the owners of an auto-salvage yard can be charged with and convicted of violating Ohio's hazardous-waste laws when they dispose of and store hazardous waste on their facilities and are in fact operating a hazardous-waste facility. See *State v. Schachner* (1999), 131 Ohio App.3d 808, 723 N.E.2d 1127.

{¶ 29} Appellants' first assignment of error is found well taken in part and not well taken in part.

{¶ 30} In their second assignment of error, appellants argue that the award of state civil penalties against appellants was erroneous and constituted reversible error, because it was arbitrary, unreasonable, and unconscionable. Having

already found that the judgment of liability entered against Dale Gorney was in error, we now refer to only the remaining three defendants as "appellants."

{¶ 31} Pursuant to R.C. 3734.13(C), the trial court must impose a civil penalty of up to $10,000 per day per violation. The trial court has the discretion to determine the exact amount of the penalty to ensure that it will be significant enough to affect the violator and deter future violations. *State ex rel. Montgomery v. Maginn* (2002), 147 Ohio App.3d 420, 426–427, 770 N.E.2d 1099. Therefore, the trial court's decision determining the amount of the civil penalty should not be overturned unless it is unreasonable, arbitrary, or unconscionable. *State ex rel. Brown v. Dayton Malleable, Inc.* (1982), 1 Ohio St.3d 151, 157, 1 OBR 185, 438 N.E.2d 120, and *State v. Tri–State Group, Inc.*, 7th Dist. No. 03 BE 61, 2004-Ohio-4441, 2004 WL 1882567, ¶ 103. In making this determination, the court should consider evidence relating to defendant's recalcitrance, defiance, or indifference to the law; the financial gain that accrued to defendant; the environmental harm that resulted; and the extraordinary costs incurred in enforcement of the law. See *State ex rel. Brown.*

{¶ 32} First, appellants argue that the trial court erred in awarding an excessive penalty based upon a finding that appellants were recalcitrant, defiant, or delayed compliance.

{¶ 33} Appellants were cited for 15 violations covering 1,850 days of violations since 2003. Based upon the evidence submitted, the court found that the violations caused a risk of harm to the public and environment and that appellants failed to comply with the inspector's warnings, failed to remedy the violations timely and thoroughly, and even attempted to hide some violations. Furthermore, the court found that the violations resulted in little economic gain to appellants (only $7,862 for the cost of insurance) and the state did not incur any unusual or extraordinary expenses in enforcing the law. The court noted that appellants did not produce any mitigating evidence.

{¶ 34} The court reduced the number of days to 180 as suggested by appellee, who uses this number as a matter of policy for their maximum penalty computations. Under the statute, the court could have imposed up to $10,000 per day or $1,800,000. Appellee sought a penalty of $211,000. The court imposed a fine of $61,862 ($100 a day for 180 days, plus $200 a day for 180 days because of appellants' recalcitrance, defiance, or delayed compliance, plus $7,862 for the economic gain to appellants).

{¶ 35} Upon a review of the transcript of the hearing on damages, we find that the testimony of the EPA investigator was sufficient to support the trial court's findings. The inspector testified that this was the worst salvage yard he had seen in 20 years and that it had significant violations. While appellants did make

some changes following the inspector's nine visits to the site, appellants were not cooperative in completing the necessary changes considering the time frame involved. They even moved some improperly stored materials to another property and told the inspector that they had taken care of it. Even when appellants did make changes, they did not notify the inspector. It appeared to the inspector that, for whatever reason, appellants had no intention to correct the violations in a proper manner. In its June 19, 2008 judgment, the court ordered appellants to bring their property into compliance with the law within 60 days. Yet, at a show-cause hearing held on October 31, 2008, appellants had still failed to comply with the law regarding six of the nine issues identified. While there was evidence of some changes being made, those changes are somewhat superficial in light of the whole case. Although changes have been made to decrease contamination, the inspector testified that appellants still have failed to investigate the contamination of the property to determine what still remains to be done.

{¶ 36} Second, appellants argue that the court erred by awarding a civil penalty without considering the financial ability of appellants to pay the penalty. We agree that the financial status of the defendants is relevant evidence to determine whether the civil penalty is appropriate to deter future conduct. *State ex rel. Celebrezze v. Thermal–Tron, Inc.* (1992), 71 Ohio App.3d 11, 19, 592 N.E.2d 912. Likewise, the court may consider the financial status of the defendants to determine if the amount of penalty is so high that it causes bankruptcy. *State ex rel. Brown*, 1 Ohio St.3d at 156, 1 OBR 185, 438 N.E.2d 120.

{¶ 37} However, we disagree that it is the state's duty to produce such evidence. The cases cited by appellants involve the defendant's attempt to introduce such evidence, *State ex rel. Brown v. Dayton Malleable, Inc.*, or the court's consideration of such evidence, *State ex rel. Petro v. Maurer Mobile Home Court, Inc.*, 6th Dist. No. WD–06–053, 2007-Ohio-2262, 2007 WL 1378611, ¶ 62. The state does not bear the burden of producing mitigating evidence or proving that the penalty is not too high. The state has the right under the statute to seek the maximum penalty permitted.

{¶ 38} Appellants' second assignment of error is not well taken.

{¶ 39} Having found that the trial court did commit error prejudicial to one appellant and that substantial justice has not been done in part, the February 19, 2008 judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. The judgment is reversed only as it relates to the granting of summary judgment against Dale Gorney. The judgment is affirmed in all other aspects. Furthermore, the judgments of June 19, 2008, February 27, 2009, and April 2, 2009 awarding an injunction and civil penalties are vacated only as to Dale Gorney. In all other respects, those judgments are affirmed. Appellants,

LG Development Corporation, Victory Steel, L.L.C., and Mark Gorney, are hereby ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed in part
and reversed in part.

Osowik, P.J., and Pietrykowski, J., concur.