[Cite as *State ex rel. Cordray v. Massarelli*, 2013-Ohio-3321.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, EX REL,<br>ATTORNEY GENERAL<br>RICHARD CORDRAY | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | Case No. 2012 AP 08 0045 |
| -vs- | |
| SHIRLEY A. MASSARELLI | O P I N I O N |
| Defendant-Appellant | |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County
                             Common Pleas Court, Case No.
                             2010 CV 04 0541


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      July 24, 2013


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant


RICHARD CORDRAY                       EUGENE H. NEMITZ, JR.
OHIO ATTORNEY GENERAL                 136 2nd Street NE
                                      New Philadephia, Ohio 44663
CASEY L. CHAPMAN
L. SCOTT HELKOWSKI
ALANA R. SHOCKEY
Assistant Attorneys General
Envirnonmental Enforcement Section
30 East Broad Street, 25th Floor
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1}   Defendant-appellant Shirley A. Massarelli appeals the July 10, 2012 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which found her in violation of R.C. 6109.31, and imposed a civil penalty of $144,450.00. Plaintiff-appellee is State of Ohio, ex rel. Attorney General Richard Cordray ("the State").

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant owned and operated The Red Onion Bar ("the Bar") and The Red Onion Party Center ("the Party Center"). Pursuant to R.C. 6109.21 and Ohio Adm. Code 3745-84-02(A), these establishments were public water systems; therefore, Appellant was required to obtain licenses to operate ("LTOs") from the Ohio EPA, and follow certain regulations for providing drinking water to the public. Appellant was also required to complete applications and pay fees to renew the LTOs.

{¶3}   Appellant did not obtain or apply for LTOs for the Bar in 2005, 2006, 2007, or 2008. Appellant was late in submitting the LTO applications in 2009, and 2010. Appellant, nonetheless, continued to operate the Bar and serve drinking water to the public. In addition, throughout substantial periods of her ownership of the Bar, Appellant failed to properly complete the required bacteriological sampling of the water served to the public. Appellant failed to sample the drinking water at the Bar for total coliform during 3 quarters of each year between 2005, and 2009. Appellant failed to monitor the drinking water at the Bar for nitrate in 2004, 2005, and 2008, and for nitrite in 2005. Appellant did not post public notifications for her failures to monitor these chemicals.

{¶4} With respect to the Party Center, Appellant failed to apply for LTOs in 2005, 2006, and 2007, and applied late in 2008, and 2009. Appellant submitted a late application in 2010. Appellant, nonetheless, continued to operate the Party Center and serve drinking water to the public. In addition, throughout substantial periods of her ownership of the Party Center, Appellant failed to properly complete the required bacteriological sampling of the water served to the public. Appellant failed to sample the drinking water at the Party Center for total coliform during 3 quarters of each year between 2005, and 2009. Appellant failed to monitor the drinking water at the Party Center for nitrate in 2004, 2005, and 2008, and for nitrite in 2005. Appellant did not post public notifications for her failures to monitor these chemicals.

{¶5} Ohio EPA made on-going attempts to bring Appellant to compliance. Appellant received her first violation for failure to monitor in 1991. Ohio EPA sent Appellant courtesy reminders, monitoring schedules, notifications, and notice of violation letters. Ohio EPA also made phone calls and conducted on-site visits in an attempt to achieve compliance from Appellant.

{¶6} After these attempts proved unsuccessful, Ohio EPA moved to the next level of enforcement - a bilateral compliance agreement. The bilateral compliance agreement identified the violations and the actions Appellant agreed to undertake to return to compliance. The document was signed by Appellant as well as the Chief of the Division of Drinking and Ground Water. Appellant signed the bilateral compliance agreement in 1999, but did not perform the necessary actions. In 2001, Ohio EPA moved to the next level of enforcement with the Director issuing Final Findings and

Orders, and Appellant agreeing to comply with the safe drinking water laws and monitoring schedules. Nonetheless, Appellant's violations continued.

{¶7} In 2010, Appellant submitted an application for the LTOs eight months late. The application was denied due to her noncompliance. Appellant's case was referred to the Ohio Attorney General's Office in September, 2009.

{¶8} On April 30, 2010, the State filed a complaint, seeking injunctive relief and civil penalty against Appellant. The complaint alleged Appellant served drinking water to the public without having the proper licenses; Appellant failed to routinely test the drinking water to ensure its safety for human consumption; and Appellant failed to inform the public of the violations. The State also sought a preliminary injunction. On May 28, 2010, the trial court ordered Appellant to cease operation of the Bar and Party Center until she obtained the necessary licenses.

{¶9} The State filed a motion for partial summary judgment on the issue of liability relative to Counts One through Ten of the complaint. Via Decision filed April 6, 2011, the trial court found Appellant liable for the ten violations. The trial court determined Appellant had not monitored for total coliform, nitrate, and nitrite; had not given public notice of the failure to monitor; and had not timely obtained LTOs before providing drinking water to the public.

{¶10} The trial court conducted a hearing to determine the civil penalties on April 5, 2012. Holly Kaloz, an enforcement coordinator with Ohio EPA, testified regarding Appellant's history of noncompliance, the number of violations Appellant committed, the risk of harm posed by those violations, the economic benefit Appellant received

because of the violations, the recalcitrance Appellant exhibited, and the cost of the enforcement since the referral to the Ohio Attorney General's Office.

{¶11} The State filed its Civil Penalty Post-Hearing Briefs on April 13, 2012. Appellant filed her Post-Trial Memorandum on May 4, 2012. Therein, Appellant raised, for the first time, the State's failure to present evidence the Attorney General's Office received a written referral letter from the Director of Ohio EPA. The State filed a Reply opposing Appellant's assertion and attaching a copy of the authenticated referral letter. Appellant filed a motion to strike the letter as untimely introduced, to which the State filed a memorandum contra.

{¶12} Via Decision filed July 10, 2012, the trial court assessed a civil penalty against Appellant in the amount of $144,450.00, which represented a fine of $10 per each of the 14,445 separate violations.

{¶13} It is from this decision Appellant appeals, raising the following assignments of error:

{¶14} "I. THE ATTORNEY GENERAL OF OHIO FAILED TO PROVE BY ANY SUBMISSION OF EVIDENCE THAT HE HAD BEEN REQUESTED BY THE OHIO DIRECTOR OF THE ENVIRONMENTAL PROTECTION AGENCY TO TAKE ACTION AGAINST DEFENDANT AS IS REQUIRED BY OHIO REVISED CODE §6109.32 TO AUTHORIZED SUCH ACTION AND THE TRIAL COURT ERRED IN FAILING TO DISMISS THE COMPLAINT.

{¶15} "II. THE STATE'S DELAY IN ENFORCEMENT CAUSED THE NUMBER OF DAYS TO BE AN EXCESSIVELY HIGH NUMBER OF DAYS OF VIOLATION AND POTENTIALLY (AND IN FACT DID) CAUSE A GREATER PENALTY AS THE COURT

USED A MULTIPLE OF WHAT HE CONSIDERED THE NUMBER OF DAYS OF VIOLATION TO CALCULATE THE PENALTY AND THE COURT ERRED IN COUNTING ALL OF THE DAYS CLAIMED BY THE STATE AS VIOLATIONS.

**{¶16}** "III. THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT WAS IN VIOLATION OF OHIO SAFE WATER DRINKING LAWS FOR 14,445 DAYS.

**{¶17}** "IV. THE TRIAL COURT'S FINDING THAT DEFENDANT GAINED AN ECONOMIC BENEFIT FROM HER VIOLATION OF THE SAFE DRINKING WATER LAWS 'WAS NOT IN EXCESS OF $144,450.00' IS SERIOUSLY MISLEADING AND AN ABUSE OF DISCRETION. THE COSTS OF THE WATER TESTING WAS A QUARTERLY EXPENSE EACH YEAR FROM 2005 TO 2099 [SIC] – A FEW HUNDRED DOLLARS AT MOST.

**{¶18}** "V. THE TRIAL COURT ABUSED ITS DISCRETION AND FAILED TO TAKE INTO ACCOUNT THAT THE AMOUNT OF THE CIVIL PENALTY IMPOSED BY THE COURT WOULD BE RUINOUS OR OTHERWISE DISABLING AS INDICATED BY THE TESTIMONY OF DEFENDANT.

**{¶19}** "VI. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A CIVIL PENALTY PURSUANT TO OHIO REVISED CODE §6109.31."

I

**{¶20}** In her first assignment of error, Appellant contends the trial court erred by not dismissing the complaint as the State failed to present evidence the Attorney General had received a written request from the Director of Ohio EPA to take action against her as required by R.C. 6109.32.

**{¶21}** Chapter 6109 of the Ohio Revised Code addresses safe drinking water. Under Section 6109.32, "[t]he attorney general, upon written request by the director [of environmental protection], shall bring an action for injunction or other appropriate action against any person violating or threatening to violate [this chapter]."

**{¶22}** In her post-trial memorandum, Appellant asserted, for the first time, the trial court lacked jurisdiction as the State failed to present evidence the Director of Ohio EPA sent a written request to the Attorney General to bring an action. The State filed a Reply and attached a copy of the written request. Appellant moved to strike the exhibit as untimely. The trial court found the documentation regarding the referral from the Director of Ohio EPA to the Attorney General was not a filing requirement, and that the State was not required to prove a written referral was properly made before a judgment can be issued. The trial court relied upon the decision of the Ninth District Court of Appeals in *State ex rel. Cordray v. Helms*, 192 Ohio App.3d 426, 2011-Ohio-569,

**{¶23}** In *Helms*, the attorney general filed complaints against the Helms, who were the operators of an apartment complex, alleging, inter alia, violations of safe drinking water and wastewater treatment laws. *Id.* at para 1. The Helms challenged the trial court's jurisdiction, arguing the Ohio Environmental Protection Agency did not properly authorize the lawsuit; therefore, the attorney general did not have authority to file a complaint. *Id.* at para 10. The trial court permitted the State to provide a copy of the referral letter after the hearing. *Id.* at para 12. On appeal, the Ninth District upheld the trial court's decision to admit the referral letter into evidence after the conclusion of the hearing. *Id.*

**{¶24}** We note a trial court has authority to consider any pertinent evidentiary materials when determining its own jurisdiction. *Southgate Develop. Corp. v. Columbia Gas Transmission Corp.,* 48 Ohio St.2d 211 (1976). Accordingly, we find the trial court did not abuse its discretion in accepting the referral letter into evidence post-hearing.[1]

**{¶25}** Appellant's first assignment of error is overruled.

II

**{¶26}** In her second assignment of error, Appellant argues the State's delay in enforcement caused the number of days of violation to be excessive, resulting in a greater penalty as the trial court used a multiple of the number of days violation in determining the civil penalty. Appellant concludes the State acquiesced to Appellant's violations and should be barred from seeking civil penalties against her.

**{¶27}** The State brought the action against Appellant in 2010, for violations occurring between 2005, through 2009. As set forth in our Statement of the Case and Facts, Ohio EPA made repeated attempts to bring Appellant into compliance. Appellant signed compliance agreements consenting to comply with the safe drinking water laws and monitoring schedules. Appellant repeatedly breach those agreements.

**{¶28}** We do not find an unreasonable or unfair delay in the State's initiating the action. Ohio EPA tried to work with Appellant to bring her into compliance. She was able to effectively avoid her obligations for years on end.

**{¶29}** Appellant's second assignment of error is overruled.

---

[1] While unnecessary for our disposition of this assigned error, we question whether the absence of a written referral letter would prohibit the Attorney General from seeking enforcement action on his or her own initiative. We do not interpret the statute as one of limitation of authority, but rather when authority must be exercised.

III

**{¶30}** In her third assignment of error, Appellant maintains the trial court erred in finding she was in violation of Ohio drinking water laws for 14,455 days. Appellant submits the trial court simply accepted the total number of alleged violations as testified to by the State's witness.

**{¶31}** We find Appellant has waived any argument as to the appropriateness of the trial court's finding relative to the number of days of violations. Appellant did not oppose the State's motion for summary judgment on the issue of liability.

**{¶32}** Appellant's third assignment of error is overruled.

IV

**{¶33}** In her fourth assignment of error, Appellant submits the trial court's finding the economic benefit she gained from her violations of the safe drinking laws was an abuse of discretion. Appellant claims any economic benefit she gained was, at most, several hundred dollars per year, which represents the cost of performing the required testing.

**{¶34}** In *State v. ex rel. Brown v. Dayton Malleable*, 1 Ohio St.3d 151, 153, 438 N.E.2d 120 (1982), the Ohio Supreme Court discussed the factors a trial court should consider when determining the appropriate amount of a civil penalty. Those factors are: 1) the harm or threat of harm posed to the environment by the violations 2) the level of recalcitrance, defiance, or indifference demonstrated by the violator of the law (the defendant's good or bad faith); 3) the economic benefit gained by the violation; and, 4) the extraordinary costs incurred in enforcement. *Id.*

**{¶35}** In its July 10, 2012 Decision, the trial court addressed these factors and concluded the civil penalty was not in excess of Appellant's economic benefit. We find the trial court did not abuse its discretion in making this finding.

**{¶36}** Appellant's fourth assignment of error is overruled.

V, VI

**{¶37}** Because Appellant argued her fifth and sixth assignments of error together, we shall likewise address them together.  In her fifth assignment of error, Appellant asserts the trial court abused its discretion in failing to take into account how the civil penalty would be ruinous and otherwise disabling to her.  In her sixth assignment of error, Appellant contends the trial court abused its discretion in imposing a civil penalty in the amount of $144,450.

**{¶38}** "Civil penalties can be used as a tool to implement a regulatory program." *State ex rel. Brown v. Howard* (1981), 3 Ohio App.3d 189, 191, 3 OBR 216, 444 N.E.2d 469, citing *United States ex rel. Marcus v. Hess* (1943), 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. Substantial penalties are used as a mechanism to deter conduct contrary to the regulatory program. *Id.* (Citation omitted); *Dayton Malleable,* supra. In order to be an effective deterrent to violations, civil penalties should be large enough to hurt the offender but not cause bankruptcy. *Howard;  Dayton Malleable.*

**{¶39}** The assessment of an appropriate civil penalty lies within the sound discretion of the trial court and will not be reversed upon appeal absent evidence that the trial court abused its discretion in imposing the penalty. *Dayton Malleable, Inc.*, supra at 157.  In making this determination, the court should consider evidence relating to defendant's recalcitrance, defiance, or indifference to the law; the financial gain that

accrued to defendant; the environmental harm that resulted; and the extraordinary costs incurred in enforcement of the law. See *State ex rel. LG Dev. Corp.* 187 Ohio App.3d 211, 219, 931 N.E.2d 642, 648. See also *Howard; State ex rel. Celebrezze v. Thermal–Tron, Inc.* (1992), 71 Ohio App.3d 11, 592 N.E.2d 912.

**{¶40}** We find the trial court did not abuse its discretion in its application of the *Dayton Malleable* factors in the instant action.

**{¶41}** First, the trial court found Appellant's violations "posed a moderate threat to the consuming public at her places of business." Kaloz testified the monitoring of total coliform is necessary as it is an indicator of whether microbial organisms such al E. Coli and Fecal Coliform are present in drinking water. Kaloz explained such organisms could cause the public to become ill. Appellant served untested drinking water to the public 15 out of the last 21 monitoring periods. Likewise, the monitoring of nitrates and nitrites is necessary as such contaminants could also result in illness. In addition to failing to monitor, Appellant failed to provide notice to the public of the lack of monitoring. We find the trial court did not abuse its discretion when it determined Appellant's violations posed a moderate threat.

**{¶42}** Next, the trial court concluded Appellant's "indifference to the potential threat caused by her violations was significant." The evidence in the record supports this conclusion. Appellant's recalcitrance and indifference is exhibit by her years of violating the safe drinking water laws which placed her customers' health in jeopardy. Ohio EPA attempted to work with Appellant to bring the water systems into compliance. Appellant repeatedly failed to remedy the violations. Appellant blamed Ohio EPA for the violations, claiming the department failed to send courtesy reminders to her correct

mailing address.    Appellant acknowledged she provided Ohio EPA with the address and had, in fact, received mail from the department which she did not open.  We find the trial court did not abuse its discretion in finding Appellant's indifference was significant.

**{¶43}** The trial court also found Appellant gained an economic benefit from the violations.  A court may presume an economic benefit from environmental violations. *State ex rel. Petro v. Tri-State Group, Inc.*, 7th Dist. No. 03BE61, 2004-Ohio-4441.  By violating the safe drinking water laws, Appellant avoided the costs incurred in sampling the water as well as the fees associated with the LTOs.  In addition, any profit earned by the Bar and the Party Center while Appellant operated the businesses without LTOs and without sample monitoring would be an economic benefit.  It is impossible for either the trial court or this Court to calculate the precise amount of economic benefit Appellant gained by her non-compliance.  Had Appellant complied, she may have incurred costs to resolve any non-compliance problems and such may have included periods of having to shut down operations.  Although an exact dollar figure cannot be calculated, we find the trial court did not abuse its discretion in finding Appellant gained an economic benefit.

**{¶44}** The trial court considered the fourth factor – extraordinary costs incurred in enforcement – and concluded the enforcement costs incurred by the State were "relatively minimal".  Although Ohio EPA spent a number of years working with Appellant to bring her into compliance, we find the trial court did not abuse its discretion in reaching this conclusion.

**{¶45}** Appellant's fifth and sixth assignments of error are overruled.

**{¶46}** The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J. and

Delaney, J. concur

_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO, EX REL,              :
ATTORNEY GENERAL                   :
RICHARD CORDRAY                     :
                                    :
    Plaintiff-Appellee             :
                                    :
-vs-                                :         JUDGMENT ENTRY
                                    :
SHIRLEY A. MASSARELLI               :
                                    :
    Defendant-Appellant            :         Case No. 2012 AP 08 0045


    For the reasons stated in our accompanying Opinion, the judgment of the

Tuscarawas County Court of Common Pleas is affirmed.  Costs to Appellant.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY